FILED

APR 18 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 06-81 (RMU) |
| v. | : | |
| **RENEE A. LANGLEY** | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant, RENEE A. LANGLEY, and the United States agree and stipulate as follows:

Between June 2003 and October 2004, defendant RENEE A. LANGLEY was employed by George Washington University ("GWU") as an executive aid in the Treasury Management Division ("TMD"), located at 2121 I Street, N.W., in the District of Columbia. The TMD handled checks, vendor payments, wire transfers, and banking relationships for accounts not directly related to student enrollment. Defendant's job duties included dealing with contributions from endowments and wills and trusts as well as providing administrative support to the Director of Cash Management and the Associate Vice President of Finance. In her employment capacity, defendant was authorized to initiate preparation of cashier's checks issued by Riggs Bank from GWU's working capital account, number xxx923, to approved vendors as payment or prepayment for services rendered or for legitimate expenses. Defendant was also authorized to issue payment requests to the accounts payable department for prize/award checks to be issued to students through GWU's working capital account, number XXX923. Defendant had access and was authorized to check funds available in endowment accounts prior to sending requests to the

accounts payable department. GWU also issued defendant a credit card (called a purchase card or "P card") for her to use for work-related expenses. As was the case with all GWU employees, defendant was required to obtain authorization from her supervisor for P card purchases.

While employed at GWU, defendant developed a scheme whereby she embezzled over $75,748.43 in funds from GWU using three general methods. First, she caused cashier's checks to be issued on GWU's working capital account at Rigg's Bank, made payable to businesses or family members or other individuals, which she then endorsed and used for her own purposes. Second, she used her GWU-issued "P card" to pay for $5,895.3 in personal items and services not related to her work and not authorized by her supervisors as required. Third, she obtained a Verizon cellular phone account in the name of a co-worker, and without the co-worker's authorization obtained a second phone line for herself associated with the account. Using this account, defendant accrued in excess of $981.44 in cell phone charges.

In furtherance of her scheme, defendant used her P-card to purchase items and services that were not authorized by her supervisor and unrelated to her work at GWU. Specifically, on December 23, 2003, while in her office in the District of Columbia, defendant used her P-card to purchase an electronic airline ticket for $749.00 from Alaska Airlines for round-trip airfare between Washington, D.C.- Dulles to Seattle, Washington on behalf of her son, Z. D. In making this purchase, defendant transmitted and caused to be transmitted by means of wire communication in interstate commerce, e-mail communications to Alaska Airlines, a company located in Seattle, Washington. Defendant also purchased airline tickets for herself and three friends from Continental Airlines for another trip, as well as a Dell laptop, a Personal Digital Assistant (P.D.A.), course-work at the University of Phoenix, use of a rental car, Verizon phone

service and other personal items.

Also as part of defendant's scheme to embezzle money from GWU, she created written memoranda purportedly authored by GWU employees requesting the issuance of cashier's checks from Riggs Bank drawn on GWU's working capital bank account. Defendant then transmitted these requests to a Riggs Bank branch office in the District of Columbia, causing Riggs Bank to issue the cashier's checks. Once issued, defendant would pick-up the cashier's checks or have them delivered to her at GWU.

On February 6, 2004, defendant fraudulently obtained a cashier's check issued by Riggs Bank, drawn on GWU bank account number XXX923 and made payable to "P.F. Ford," which she used to purchase a 2004 Ford Expedition from Prince Frederick Ford in Prince Frederick, Maryland. Defendant embezzled the funds used to pay for the Expedition by creating a false payment request memorandum addressed to herself from "G.N.," an employee of GWU's Office of Public Safety & Emergency Management ("O.P.S.E.M.) This memorandum directed that she obtain a cashier's check made payable to "PF Ford" in the amount of $37,493.69. Defendant sent the request for the cashier's check to a Riggs Bank branch office in the District of Columbia. Upon receiving the request, Riggs Bank issued check number 5041941356 in the amount of $37,493.69, made payable to "P.F. Ford," drawn on GWU account number XXX923. Defendant gave the check to Prince Frederick Ford as payment in full for the Expedition.

Defendant documented the Ford Expedition expenditure in GWU's budget accounting as a charge under the O.P.S.E.M. account and posted the transaction to GWU's Public Safety Department ("PSD"). Defendant then created journal entries in GWU's general ledger clearing account to offset the credit and deposited the check into the GWU Treasury account for the cash

reconciliation. Because of the off-setting journal entries, the fraud was not readily detected.

Investigators interviewed G.N., who confirmed that neither he nor anyone from his department made or authorized the request to defendant for the issuance of a check made payable to "P.F. Ford."

During the course of her employment with GWU, defendant caused several other cashier's checks to be issued by Riggs Banks drawn on GWU's working capital account, by creating false requests for the authorization of these checks and forging her supervisors' approval signatures. One of these checks was made payable to a plastic surgeon's office and the others were made payable to defendant's children or others without their knowledge, and endorsed by defendant into her M & T Bank account as follows:

| Date of Check | Check Number | GWU Account Number | Payee | Amount | Date of Deposit by Defendant |
|---|---|---|---|---|---|
| 9-5-03 | 5041616511 | XXX923 | A.W. | $2,753.00 | 9-5-03 |
| 10-9-03 | 5041616652 | XXX923 | A.W. | $2,200.00 | 10-11-03 |
| 11-17-03 | 1753475 | XXX923 | Z.D. | $2,000.00 | 11-19-2003 |
| 12-10-03 | 1756894 | XXX923 | A.W. | $2,000.00 | 12-26-03 |
| 12-17-03 | 5041625168 | XXX923 | E.M. | $2,600.00 | 12-17-03 |
| 1-20-04 | 5041941275 | XXX923 | R.A. | $6,600.00 | 1-20-04 |
| 4-10-04 | 5041945950 | XXX923 | Washington Plastics | $3,700 | N/A |
| 5-14-04 | 1787509 | XXX923 | A.H. | $700.00 | 7-6-04 |
| 6-15-04 | 1793594 | XXX923 | A.W. | $2,225.00 | 6-17-04 |
| 8-18-04 | 5041960561 | XXX923 | S. M. | $6,600.00 | 8-18-04 |

Defendant also used the cellular phone account she fraudulently obtained through a co-worker at GWU to make personal calls without the permission of that co-worker or her supervisor, accruing charges in the amount of $981.44.

FBI Agents interviewed defendant on December 23, 2004 at her residence in Maryland. As soon as the agents identified their purpose for speaking with her, defendant stated that was she did was "stupid" and that she was sorry. Defendant claimed that she was desperate for money and experiencing financial difficulties. During the interview, defendant admitted that on or between June 2, 2003 and August 20, 2004, she used her GWU P-card to purchase goods and services for her own benefit that had nothing to do with her job responsibilities, including an Alaskan Airline ticket for her son's travel to Seattle; four Continental airline tickets for a trip from Baltimore, MD to Seattle, WA for herself and three friends; a vehicle rental, a laptop; college tuition payments; and other miscellaneous items.

Defendant also admitted that she created the fraudulent memorandum from GWU employee G.N. requesting that a cashier's check be issued to "P.F. Ford, Inc." She further admitted sending the request via facsimile to Riggs Bank in the District of Columbia, causing Riggs Bank to issue a cashiers check in the amount of $37,493.69 from a GWU account, which she then gave to Prince Frederick Ford as payment in full for a 2004 Ford Expedition.

During the interview, defendant stated that she had recently sold the Ford Expedition to CarMax in Laurel, Maryland and acknowledged that she deposited those proceeds into her M & T Bank account. Defendant further claimed that she had sent these proceeds to GWU. Agent Williams also interviewed the general manager of the CarMax in Laurel, Maryland, who confirmed that CarMax had purchased the Ford Expedition from defendant on December 4,

2004.

Records for M & T Bank account #XXX7315, held in the name of defendant reflect a December 6, 2004 deposit of a check from CarMax, in the amount of $22,400, dated December 4, 2004, made payable to defendant. However, these M & T Bank records do not reflect any checks or large withdrawals supporting defendant's claim that she had given the proceeds from the sale of the Ford Expedition to GWU. To the contrary, the records reflect that defendant used the proceeds from the sale of the Ford Expedition to pay bills and purchases personal items.

Defendant also admitted to agents that she had created several other fraudulent requests and sent them to Riggs Bank, causing Riggs Bank to issue cashiers checks made payable to defendant's family members and other individuals, without their knowledge, that she later endorsed and cashed for her own benefit.

## **DEFENDANT'S ACCEPTANCE**

I have read every word of this six-page statement of offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this statement of offense, and declare under penalty of perjury that it is true and correct.

Date: 4-18-06

*Renee Langley*
RENEE A. LANGLEY, Defendant

I have read every word of this six-page statement of offense and reviewed and discussed it with my client. I concur with his decision to stipulate to this statement of offense.

Date: 4/18/06

JONATHAN JEFFRESS
Attorney for Defendant